May it please the Court, Daniel Rogers, or Appellant and Respondent, Warden. Your Honors, the District Court in this case improvidently granted habeas corpus relief for two reasons, both of them having to do with its strickland analysis. First of all, the issue as to whether the AOL instant message statement would have been admissible under California law is at least debatable. And after Richter, we are reminded again that only where there is no possibility that fair-minded jurists may disagree as to the reasonableness of the State Court's application of the controlling United States Supreme Court authority is relief warranted. In this case, particularly in light of the fact that in Kennedy's other trial in which he was convicted of molesting his wife's 17-year-old sister, this evidence was offered and excluded. So based on that, there is at least debate as to whether the evidence would have been admissible in this case. Well, the relevance of this evidence in the other trial was considerably different. There were relevance issues which are quite different than would be present here. Correct. So I'm not sure that one necessarily will give a hint as to the other. I think if you look at the Court of Appeal opinion in the other case, the Court of Appeal was addressing two evidentiary issues with respect to the same piece of evidence. One, the foundational question, the authenticity of the statement. The statement is only relevant as a prior inconsistent statement if Asha is, in fact, the author of the statement. That doesn't change regardless of why Asha is testifying in the case, the authenticity analysis. The second point that the State Court was looking at in that case is Evidence Code Section 352. I believe the analog is Federal Rules of Evidence 403. I'll ask the Court to indulge me. I am far more familiar with the State Rules of Evidence. You've focused my mind a bit here. To what issue are you – to what error do you speak? This is with respect to the deficient performance analysis, and there's also an aspect of the prejudice here. If the evidence was inadmissible, Sullivan would not be deficient for failing to put it on Attorney Sullivan, the defense attorney. Is there anything that goes to what's before us on Strickland other than failure to interview the girl and her mother, to learn the contents of the statement and to go through the box of documents and see the content of the statement, and then to attempt to put the statement into evidence? Is there anything more than the recantation on the AOL account by the victim that is before us? If I'm understanding your question, I think that, as with any Strickland claim, prejudice. I understand the prejudice from the failure to put it on. It's also before us, even if the lawyer was totally – was far below the standard of competent counsel because he didn't read the documents in the box and didn't talk to the girl, didn't find out about the statement. Even if he fell below the minimal standard of competence, nevertheless, if he couldn't have gotten it in anyway, there's no prejudice. I understand that. What I'm trying to find out is if there's any other ineffective assistance we have to consider. I'm not – if I'm understanding the court's question, I'm not aware of any, I think. Yeah, I think that's basically it. Not either. What you have here, I mean, you have a victim testifying to something that only she and the alleged perpetrator know. And then she tells one story in court and tells her friend that she made it up. So the question is whether the lawyer should have pursued the written evidence of her statement that she had made it up. Well, Your Honor, I think there is a question as to whether she made the statement. I think Your Honor's question assumes that she made the statement. Well, it would appear from what is in the record before us that she did. It was in the type of wording that a person of her age would use. It was to someone she knew. There was nobody else who used her account. So – Your Honor, I suppose I look at the evidence differently in that respect. First of all, this is an account that is accessed from a home computer, and I understand that the evidence is that in February the computer was no longer available. At page 218 of the excerpts, Asha specifically says, and I apologize, I think in the reply brief I accidentally used the pagination from the transcript of the evidentiary hearing, and the correct page is 218. Asha says, I don't remember giving anyone else my password. I don't remember writing it down. That certainly doesn't preclude the possibility that someone with a motive to fabricate a statement calling Asha's credibility into question could – As the state court in the Tiffany case noted, these aren't the launch codes for our nation's nuclear arsenal. This is a 13-year-old girl's password. These are the people who lived with her, raised her, and knew her best, to say that that is so unique an identifier, like a voice on a telephone that is recognized by a listener. But it seems to me that all of these issues you're raising really go to the – to why it was important for defense counsel to have explored these issues and to try to determine whether there was or was not any merit to them, rather than to be discussing at the appellate level. The reason I said to you, to what error do you speak, is I guess I see your burden here a little different as the appellant, is that the trial court has already granted habeas. You've appealed. Correct. And now you have to persuade us that the district court went wrong. Yes. So first of all, you have to tell us what the error is that the district court committed, and second, why that error is so egregious that it bears the necessity of our reversing a grant of habeas. So – and I just wasn't following your argument in terms of – it just seemed to me too specific and yet not specific enough. I think that the district court got its Strickland analysis wrong. Specifically what page are you referring to? Yes, what page how? What did it do that it should have done? What did it not do? First of all, I think it excerpts page 91. The court cites this court's opinion in Richter, which has since been overruled by the United States Supreme Court, in constructing its Strickland analysis, particularly with respect to prejudice and the showing required for prejudice. In the United States Supreme Court, Richter again reminds us that while the showing required for prejudice is not more likely than not, it's pretty darn close to it, and in most cases the difference in the standards will be indistinguishable. Where it goes wrong is, number one, it is, I think, incorrect in its analysis of California law as to the admissibility of a statement, and I think that point is debatable. I think fair-minded jurists could disagree as to whether the statement would have come in. Therefore, it's wrong on that point, and forgive me, I don't have a specific page reference for that analysis. It's actually several pages. Secondly, with respect to prejudice, the court looks at, well, what if it had come in? And the court really applies a very, again looking at page 91, a less stringent test than the United States Supreme Court in Richter suggests. Well, ultimately, if you read over to the next page, though, and continue on, in fact, what the district court said is that there was a probability of a different outcome, which I think meets even the Supreme Court's test. So I guess I'm not sure, and then it goes on for several pages about that. So how is that inconsistent with the current Supreme Court standard if the district court has concluded that there's a probability that at least one juror would have voted to acquit having seen this recantation in a he-said-she-said case? Well, Your Honor, I think the finding of a probability may not be inconsistent, but the finding of a probability, I think, is inaccurate. Okay, but you said there were two problems. Yes. One, because the statement wouldn't come in, and of course, that undermines everything. Correct. If that's correct. But I was focusing on you had correctly noted that they've cited the Ninth Circuit version of Richter, but in the actual analysis that follows for the next three pages, they end up saying there really is a probability that because of the nature of this kind of case and the kind of evidence that it's probable that at least one juror would have voted to acquit. So I guess I was really talking about your second alleged error that Strickland was improperly analyzed. And, Your Honor, perhaps my argument on this point is weaker than I would like. And, you know, in light of the earlier arguments, I want to be very responsive to the Court's questions. We appreciate that. Whether I'll succeed is another matter. I think that even though he uses the right words, if you consider the analysis, if you consider the specific facts that he identifies as constructing this reasonable probability, it appears particularly in light of the citation of the slight. It's not more likely than not. He specifically notes that without noting the converse that cited later in the U.S. Supreme Court's Richter opinion, that the difference between those standards is minimal. I think that the district court's understanding of what a reasonable probability is, is incorrect. And that is seen in light of the fact that we have a twice convicted child molester. Propensity evidence is powerful precisely because it demonstrates a lack of, what are the chances that Asha made up an allegation that just happens to mirror the charges in the other case of which she was convicted? Well, if she's clever, that's exactly what she would do. How does she know about it? These charges hadn't come out yet. There's no evidence she was aware of any of this. That case happens afterward, that trial, that conviction. The conviction does, but I'm trying to remember the order of the actual events. The conduct was alleged to have occurred earlier. Okay. But it's purely speculative to say there's any way she knew about it. So she comes up with this clever story that just happens to mirror an actual event that there's no evidence she knew about. Let me ask you this. Assuming that the district court's grant stands, he would be retried, correct? Or could be retried? He would be retried, yes. And so now the state would have the benefit of the other case, the other conviction. That is correct. And that could come in in a new trial. And you'd be able to make the argument you're now making to the jury. That is. That argument was made in this trial. That evidence came in as evidence code section 1108 evidence. And it demonstrates the strength of this case and the fact that there is no reasonable probability that any juror would have seen this as anything other than another attempt to discredit Asha first by dissuading her from testifying. And why would a child who has concocted this scheme to get out of this household and into her father's household, and I see my time is up. You may finish your thought. Then at the first interview with police, after Mr. Kennedy has cajoled her into changing her story, why would she then recant at that point? It's inconsistent with this supposed motive to fabricate that is established by this statement. Thank you, counsel. We will give you a little bit of rebuttal time. I appreciate that, Your Honor. Thank you. May it please the court. I am Mark Kasabian, attorney for Petitioner Below and appellee here, Earl Kennedy. Rather than go through matters that have already been briefed in the papers, let me first just respond to a few matters raised by my colleague, specifically regarding the decision below and the decision below's application of the standard for prejudice. It is true that the district court cited to the Ninth Circuit Richter case that was reversed. Nevertheless, fairly reading the language and the analysis of the district court, the district court did use the proper standard from Strickland. I don't know if it quite did. The district court used the substantive standard, but it doesn't look as though it used the additional standard of deference to the state court, which has now been expanded by the Supreme Court explicitly to say that even if there's just a postcard ruling from the state court that has no reasons at all, we have to defer to whatever reasons might have been given to justify the state court decision. Well, I don't think that that holding of the Supreme Court's ruling applies here. We just got reversed for not doing that. I understand, Your Honor. But I don't think that that portion of the holding necessarily applies in this case. Why not? Because in the Richter case from the state court level, there was never any reasoned opinion from the state courts. There was no, as I read the Supreme Court case. Well, you're saying you give less deference when it's a reasoned opinion because if the reasons they give aren't enough, you overturn them, even though if they didn't give any reasons at all, then you'd think of any good reasons they might have given had they bothered. I understand that that's logical. It is logical, but it doesn't make practical sense. Because then no state court will give reasons. And that's precisely the frustrating part about Richter, it seemed to me, is that it encourages these little drive-by orders. Well, and I understand the court's frustration. That may be the ultimate. Here's my imaginary state court decision. Well, the lawyer had an awful lot to do. And this last thing that the judge mentioned in footnote 19, it was on a lengthy to-do list during trial preparation and ultimately became consumed or distracted by other tasks, happens all the time in trial. And the Supreme Court has specifically told us lawyers can't do everything and don't do everything. And it's not ineffective assistance just because you don't. And what's more, even if he had, he was going to have huge foundation problems getting it in. And even if he got it in, it wasn't all that believable because here you have an absolutely critical computer message and the person who received it and realized just how important it was and showed her mother didn't bother hitting the screen print button or the print message button or the save as button. So it's implausible that it even existed as opposed to being cooked up later. So all in all, we're not sure that the lawyer fell below the minimum standard in not putting it in. And even if he did, it wouldn't have been prejudicial because he wouldn't have succeeded in getting it in. That's my imaginary state court decision. And I think under Richter, I'm supposed to write an imaginary state court decision like that and then say, could any reasonable jurist have made that decision? What am I missing here? I don't think so, Your Honor. First, that wasn't the holding of Richter dealt specifically with the where there was no underlying state court decision. Here there was. And the Supreme Court Richter decision, interestingly, refers specifically to the presumption. Which state court decision are you referring to now? The Court of Appeal decision. The Court of Appeal decision was the last reasoned state court decision. There is Supreme Court precedent untouched by its decision in Richter, which is appropriate because Richter was under different facts and under different procedural facts. It was untouched by the Supreme Court Richter decision. The case is cited in the papers and in the district court decision. And I can never pronounce the name Yulst. I think that's how it's pronounced. 501 U.S. 797. In the Supreme Court Richter decision, the opinion cites directly to page 803 where the Supreme Court held that where there was one reasoned state court decision, subsequent summary decisions are presumed to have been on that basis. That's untouched. Let me ask you a different question. Incidentally, on the state court decision, you're not referring to the 17-year-old. No, no, Your Honor. I'm referring to the Asha case. Let me ask you a different question. The standard or the facts, rather, that the district court relied on are those that came out in the evidentiary hearing in the district court. Now, I'm troubled. We have a case going up that the Supreme Court has taken cert on now called Pinholster where we've been pretty liberal about allowing the district court to grant evidentiary hearings and the Supreme Court is going to decide whether we're following 2254 or not. 2254 says that the court shall not hold an evidentiary hearing. A district court is prohibited from holding an evidentiary hearing unless the applicant shows that the claim relies on, and for purposes of this case, a factual predicate that could not have been previously discovered through the exercise of due diligence. Now, here, the applicant for the writ not only discovered the statement by Janell. He says it was in a box of papers he gave to his lawyer, although he didn't tell his lawyer that exactly what Janell had said. He just said there was impeaching evidence that a friend could give the lawyer. The lawyer already had a lot of impeaching evidence. But it looks like not only could Kennedy have discovered Janell's statement, he did discover Janell's statement, so it's not new evidence, and that means that the district court was not allowed to hold an evidentiary hearing, and that would seem to imply that facts that only developed on the district court's evidentiary hearing could not justify granting the writ. What am I missing in that chain of logic? I may not be following you, Your Honor, and I'll apologize. Okay, what I'm asking is, your case depends on the evidentiary hearing in district court. It looks from the statute as though the district judge wasn't allowed to hold that evidentiary hearing. If so, I wouldn't think he'd be allowed to grant the writ based on what came out in the evidentiary hearing. So if I may, with my colleague's permission, sort of try to restate it, the question is whether it's enough that a defendant tried to, but was unsuccessful in getting a hearing in state court, or whether there's yet more that the person has to do. That's the pinholster question. I think there's two things that the petitioner needs to do. First, as is briefed, is to ask for the evidentiary hearing in state court. Second is to raise the factual matters to be heard at the evidentiary hearing, which they did. To turn it around, I see a bit of a pickle if that strict reading of the statute is what it actually means, which would be that there would be no purpose for an evidentiary hearing, because all of the affidavits, all of the evidence would be put into the initial state court papers. It may be a catch-22, but if that's what the Supreme Court and Congress say, that's the way it is. But the statutes need to be read in context with one another. And if we work that way in the Fourth Amendment, it is a catch-22. You get a full and fair hearing in state court, and that's all she wrote. Well, I apologize, Your Honor. To continue my thought, if I am picking up on where I did leave off, the factual matter was raised in the petitions before the Court of Appeal and in the California Supreme Court. And I'll admit, not every scrap of evidence was put before the state courts. Nevertheless, the fact was raised. And the new issue that was raised, as I think that the statute is looking for, the new issue is the issue of the ineffective assistance of counsel. The matters were raised before Mr. Sullivan, prior to trial. He didn't use them. And just to loop back to one of the questions that the Court had asked my colleague, the state has never argued, not in its opening brief, has not argued that Mr. Sullivan's performance was not deficient. If that's going to be an issue, I think it's waived. It's all about prejudice. It's all about prejudice. I don't think there's any question that Mr. Sullivan's performance was deficient. In fact, when he was testifying at the evidentiary hearing, he admitted that if he had been told about this, it would have been dynamite. It would have literally used the word dynamite. It's in my papers. I cite to it. So there's no question that his performance was deficient. The state's argument seems to be going to prejudice. Could you, before you run out of time, address the question whether the statement could have been admissible, which of course if it's not, then the prejudice is a bit hard to show, and in particular respond about the related case. The evidence, I'll argue, and I believe, is there's no question that it's admissible. And I think there are two questions we need to be looking at here, and with respect to my colleague, I think that he conflates them a little bit. You say there's no question about whether Janell's testimony would be admissible or the writing Janell made, even though in the 17-year-old's case, the California case held that it's not admissible? Correct, Your Honor. I don't think there's a question in this case that it's admissible. Could you explain that? In the ñ rather than use my time, I do go through the various pieces of corroborating evidence in my papers. Rather than waste the Court's time and the limited time I have left, I'd refer the Court to those. That there is substantial extrinsic and intrinsic evidence that would allow a jury, allow jurors to believe that Asha was indeed the author of those, whether it's through Janell's direct testimony about what she saw or actually letting the document into evidence. I think that allowing her to testify about what she saw would be sufficient. Second, with that evidence before the jury, along with the corroborating evidence, there is more than sufficient evidence for the jury to believe that Asha indeed made those statements. Now regarding the Tiffany case, the other Court of Appeal opinion, affirming the State Court matter, referring to Mr. Kennedy's other, I'm sorry, affirming Mr. Kennedy's other conviction, Asha's testimony was collateral. It was not directly relevant to Tiffany's case. It is the core of the Asha case. He said, she said. Was she lying about what she said? She gave different stories. The relevance issue, I think, is enough to dispose of what the Court of Appeal did in the other case. This AOL message is, goes to the core of the matters before the jury in the Asha case. Second, there was a completely, there was a different offer of proof. What the Court of Appeal said in this case is, besides there is no allegation that trial counsel knew of the existence of Jay or the information on the internet, which would be contrary to what came out in the District Court evidentiary hearing, they also say, or the timeframe given for the alleged internet information. I'm not sure that's contradicted. And then they say, and there is no documentary evidence, no printout of the statement. And it looks as though that really would bear on foundation and admissibility. It might bear on it, Your Honor, but it doesn't decide the matter. There was, and there was documentary evidence. Not the printout, but a paper written down to preserve the memory. You have exceeded your time. All right. Thank you, Your Honor. Thank you. You may have a minute for rebuttal. Thank you, Your Honor. First of all, with respect to the point my colleague made regarding Richter and its applicability in this case and Yilts, I think this case is governed by Richter. And for this reason, Yilts, as I understand it. Yilts is just the warden. We tend to remember him by the other name. And that's a name I've never learned. So that's the only way I know to identify the case, Your Honor. Manamaker, which is probably not pronounced right either. Yes. In that case, Your Honor. I've learned one thing here. When I leave, I'm not going to call it Harrington anymore. I'm going to call it Richter. I'm going to call it Harrington. So there you go. And Your Honor may entirely be correct in that. I'm certainly not authority. But the point with respect to that is the California Supreme Court was presented with a declaration that Kennedy did tell Sullivan about the online statement and that Sullivan was aware. Therefore, that portion of the Court of Appeal opinion saying there's no evidence of it is incorrect. So I think that presumption is questionable in that case. And we're left to speculate then, as was the United States Supreme Court in Richter, what merits determination did the California court make? I understand that Your Honor has some concerns about drive-by orders. The state has always held, as we did in Richter, that that is a function of judicial resources. And the large volume of habeas work that the California courts are dealing with and that the U.S. Supreme Court has found that to be an appropriate manner of disposing of cases in terms of receiving 2254 deference. The only other quick question I would say is, and I think I didn't answer Judge Graber's question fully earlier, and I apologize for that because you had raised it and opposing counsel raised it again. I will agree the probative value of the impeachment evidence in this case was greater than that in the Tiffany case. But again, increased probative value has no bearing on whether a document is authentic or not. We understand your position, and you have exceeded your time. Thank you very much. The arguments of both counsel have been helpful, and we appreciate them. The case is submitted, and we are adjourned.
judges: Kleinfeld, Lucero, Graber